

# IN THE
# TENTH COURT OF APPEALS

## No. 10-18-00294-CV

## IN THE INTEREST OF K.M.R.L., A CHILD

**From the County Court at Law**
**Navarro County, Texas**
**Trial Court No. C17-25639-CV**

## MEMORANDUM OPINION

Rachel L. appeals from a judgment that terminated her parental rights to her child, K.M.R.L.  TEX. FAM. CODE ANN. § 161.001 (West 2014).  In her sole issue, Rachel complains that the evidence was factually insufficient for the jury to have found by clear and convincing evidence that termination was in the best interest of the child.  Because we find that the evidence was factually sufficient, we affirm the judgment of the trial court.

In determining whether the evidence is factually sufficient to support the termination of a parent-child relationship, we are required to perform "an exacting review of the entire record." *In re A.B.*, 437 S.W.3d 498, 500 (Tex. 2014).  In reviewing the evidence for factual sufficiency, we give due deference to the factfinder's findings and do

not supplant the judgment with our own. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). As relevant to this proceeding, we determine whether, on the entire record, a factfinder could reasonably form a firm conviction or belief that termination of the parent-child relationship was in the best interest of the children. *See* TEX. FAM. CODE ANN. § 161.001(b)(2) (West 2014); *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002). If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction in the truth of its finding, then the evidence is factually insufficient. *H.R.M.*, 209 S.W.3d at 108.

Decisions involving the termination of the parent-child relationship must be supported by clear and convincing evidence. *See* TEX. FAM. CODE ANN. §§ 161.001(b), 161.206(a) (West 2014); *In re E.N.C.*, 384 S.W.3d 796, 802 (Tex. 2012). Evidence is clear and convincing if it "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2014); *E.N.C.*, 384 S.W.3d at 802.

There is a strong presumption that keeping a child with a parent is in the child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). Nonexclusive factors that the trier of fact in a termination case may also use in determining the best interest of the child include the following: (A) the desires of the child; (B) the emotional and physical needs of the child now and in the future; (C) the emotional and physical danger to the child

now and in the future; (D) the parental abilities of the individuals seeking custody; (E) the programs available to assist these individuals to promote the best interest of the child; (F) the plans for the child by these individuals or by the agency seeking custody; (G) the stability of the home or proposed placement; (H) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (I) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). These factors are not exhaustive, and some listed factors may be inapplicable to some cases. *C.H.*, 89 S.W.3d at 27. Furthermore, undisputed evidence of just one factor may be sufficient in a particular case to support a finding that termination is in the best interest of the child. *Id*. On the other hand, the presence of scant evidence relevant to each factor will not support such a finding. *Id*.

K.M.R.L. was removed from Rachel when they were located by the Department during the wintertime living in Rachel's vehicle which did not have all of the glass in the windows, with broken glass protruding in places. The windows were covered in plastic. The Department had been monitoring Rachel and K.M.R.L. since K.M.R.L.'s premature birth. K.M.R.L. was suffering from severe eczema, which she had been diagnosed with shortly after birth, and which appeared to be worse and had not been properly treated at the time of the removal. The day after the removal, Rachel was admitted to the hospital after being in a catatonic state due to alcohol intoxication and amphetamine use. Rachel admitted to using cocaine also.

Rachel has a long, extensive history of drug use but had been clean for around a year prior to the trial. Rachel admitted to using methamphetamine while she was pregnant with K.M.R.L. During the pendency of the case, Rachel displayed significant mental health issues but did not consistently take her prescribed medication. Rachel was involved in a relationship with a man that involved domestic violence, including sexual assault.[1] This man was arrested for assaulting her twice during the pendency of the case, and had broken her ribs several weeks prior to the trial due to what Rachel called "horseplay." This man was financially supporting Rachel at times during the proceedings and was a drug user and had a criminal history. During the pendency of the proceedings, Rachel had resided in approximately sixteen different places, was homeless at times, and had been unable to maintain steady employment.

K.M.R.L., who was around two years old at the time of trial, was placed in a relative placement with a maternal great aunt and uncle who wanted to adopt K.M.R.L. K.M.R.L. was thriving in her placement with them and had only had one eczema flare-up while placed with them. K.M.R.L. had some developmental delays which were improving in her placement. K.M.R.L. was bonded with the relatives, who testified that K.M.R.L. needed a lot of emotional support and to know that the relatives were near her.

---

[1] There was testimony that Rachel had accused her paramour of sexually assaulting her; however, at trial, she denied that this had occurred.

The aunt agreed that she would want to keep K.M.R.L. with her even if Rachel's rights were not terminated.

Rachel admits that the evidence was sufficient relating to the predicate acts that the jury also found pursuant to Sections 161.001(b)(1)(D), (E), and (O), which relate to endangering conduct and surroundings of the child as well as her failure to complete her service plan. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), & (O) (West 2014). Rachel did not challenge the sufficiency of the evidence relating to those grounds. Rather, Rachel contends that she has a loving bond with K.M.R.L., attended her visits, and could maintain a relationship with K.M.R.L. if her rights were not terminated. Because of this, Rachel contends that it could not be in the best interest of K.M.R.L. to terminate the parent-child relationship. However, it was the jury's province to determine the credibility and weight of the evidence, and we do not disagree with their ultimate determination that it would not be in K.M.R.L.'s best interest to maintain the parent-child relationship. We find that the evidence was factually sufficient for the jury to have found that termination was in the best interest of K.M.R.L. We overrule Rachel's sole issue.

**CONCLUSION**

Having found no reversible error, we affirm the judgment of the trial court.

TOM GRAY
Chief Justice

Before Chief Justice Gray,
        Justice Davis, and
        Justice Scoggins
Affirmed
Opinion delivered and filed January 2, 2019
[CV06]

